IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 23 CR 6 |
| | ) | |
| TERCALO THOMAS, | ) | Honorable Steven Seeger |
| | ) | |
| Defendant. | ) | |

**DEFENDANT POSITION PAPER ON SENTENCING AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

NOW COMES the Defendant, TERCALO THOMAS, through his attorney, JOHN MIRAGLIA and pursuant to Rule 32 of the Federal Rules of Criminal Procedure 18 U.S.C. §3553(a), as well as the Sixth Amendment to the United States Constitution, and the Supreme Court's opinion in *Gall v. United States,* 552 U.S. 38 (2007), respectfully submits the following sentencing memorandum and requests that this Honorable Court impose a sentence in the midrange of the restricted guideline range pursuant to the proposed plea agreement. Such a sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing as articulated in 18 U.S.C. §3553.

I. **INTRODUCTION AND SENTENCING REQUEST**

The period since Mr. Thomas' arrest, and subsequent detention, has been a time of reflection and remorse, with him critically examining his decisions and actions. He comes before this Honorable Court humbly and contrite as he awaits

judgment. He has admitted to his involvement in the offenses and accepts personal responsibility for his actions. Mr. Thomas is motivated to change his life, address the serious personal issues he lives with, and is guided by a real desire to contribute in whatever way possible to his family's healing.

Considering his complete lack of criminal history, said commitment to his family's well-being, and his own personal history, Mr. Thomas requests the Court to consider a midrange sentence available pursuant to the plea agreement and restricted sentencing guidelines.

II. **SENTENCING GUIDELINES AND OBJECTIONS AND/OR CORRECTIONS TO THE PSR.**

Mr. Thomas agrees that the Presentence Report (PSR) is mostly correct, in that the sentencing calculations are accurate. However, in paragraph 10, the PSR reflects that sexual contact began with the victim when she was 5 years old. That specific abuse did not begin to occur until she was a year older. This contention is not offered to minimize his conduct but rather to accurately reflect the timeline of occurrences.

III. **A MIDRANGE SENTENCE OF IMPRISONMENT WITHIN THE RESTRICTED GUIDELINES IS CONSISTENT WITH THE GOALS OF SENTENCING UNDER §3553(a)**

A. **Nature of the Offense**

Mr. Thomas takes responsibility for his choices and conduct which brings him before the Court. He is aware of the harm he has caused due to the nature of offenses. He is committed to helping his family in whatever way possible as he serves his sentence and they move forward with their lives.

### B. Mr. Thomas' History and Characteristics

Despite the offenses Mr. Thomas has pleaded guilty to, his actions do not completely embody who he is a person. "Surely, if ever a man is to receive credit for the good he [or she] has done, and his misconduct is assessed in relation to his life overall, it should be at this moment of sentencing, when his future hangs in the balance." *United States v. Adelson,* 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) (Rakoff, J). While courts cannot ignore the nature of an offense committed, neither can they disregard the positive attributes of an individual, of which Mr. Thomas has many.

    i.    **Family & Personal History**

Mr. Thomas is 35 years old man and was born and raised in Hammond, Indiana. He has resided primarily in the Chicagoland areas for most of his adult life moving a number of times.

Mr. Thomas had a poor relationship with his father, with whom he had no contact after a very young age. His father suffered from drug addiction and was suspected of sexual abuse by Mr. Thomas' mother based on a doctor's examination of Mr. Thomas when he was a small child. This information was not shared with him until recently. Mr. Thomas was raised in a household with a number of step siblings and half siblings that he was not particularly bonded with. He grew up in poverty and the family sustained itself with food and housing assistance.

At a time contemporaneous to the beginning of his daughter's abuse, he separated from his wife and moved to Kentucky to find work as his father and other

family members lived in the area. He resided with his father and was able to find work. Due to circumstances associated with Covid-19, he lost his job and enlisted with the Army National Guard. Shortly after returning to the Chicagoland area, his father passed away. He remained with National Guard in a reservist capacity until arrested on this case and was then discharged other than honorably. Mr. Thomas consistently had employment and provided financially for his family.

Mr. Thomas has had a severe addiction to adult pornography, and this fact was obvious to his wife, and they explored possible therapy to address it. As well, when he began to view child pornography, he researched therapy options independently but was dissuaded because of various program statements regarding possible criminal prosecution based on potential admissions.

### ii. Post-Offense Rehabilitation and Conduct

Mr. Thomas has participated in a variety of available programs while in custody to include self-awareness counseling and parenting. Copies of certificates will be submitted with this memorandum, and newer certificates will be presented to the Court at sentencing.

### iii. Remorse and Rehabilitation

At this point in his life, Mr. Thomas is profoundly motivated by his own remorse and his desire to express his commitment to helping his family move positively forward as best as possible within his circumstances. He is keenly aware of the sort of life before him. Aside from the potential for a substantial prison sentence, he will live with the stigma associated with these offenses. As such, he

knows that his only way forward is to help others. He would like to be involved preventative programs for those dealing with addictions. Specifically, he's of the opinion that treatments for addictions of the sort associated with his own conduct which brings him before the Court are lacking and more often than not come to bear after the damage has been done and punishment is doled out.

It is well established that prison sentences alone do not promote rehabilitation. It is similarly true there is a clear cost-benefit value inherent in rehabilitative programs that aim to lower recidivism rates.[1] Mr. Thomas comes before this Court extremely contrite, but with acknowledgement that he has a long path ahead of him, and hard work to engage in toward rehabilitation.

Section 3553(a)(2)(D) requires the courts to consider "the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." One of the goals of sentencing is rehabilitation, *see, e.g. United States v. Grayson,* 438 U.S. 41, 45-48, 98 S.Ct. 2610, 2613-14, 57 L.Ed.2d 582 (1978); *Williams v. New York,* 337 U.S. 241, 247-48, 69 S. Ct. 1079, 1038-84, 93 L.Ed. 1337 (1949), and a defendant's admission of responsibility or expression of contrition "is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence," *Smith v. Wainwright,* 664 F.2d 1194, 1196 (11th Cir. 1981). Thus, admission of guilt may be properly considered in determining what sentence is needed to achieve rehabilitation. *See Brady v. United States,* 397 U.S. 742,

---

[1] *See* www.ussc.g/publicat/Recidivism_General.pdf. At 15-16

90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In *Brady,* the Supreme Court stated, "we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary." *Id* at 753, 90 S.Ct. at 1471.

### C. Mr. Thomas Served Time in State Custody for Charges Based on the Same Facts That Brought Forth the Federal Charges in this Case

18 U.S.C. §3585(b)(1) states that a defendant shall be given credit toward a sentence when such incarceration is the "result of the offense for which the sentence was imposed." Mr. Thomas was arrested on April 8, 2022, on charges stemming from the same incident which gave rise to the charges eventually brought in this case. Mr. Thomas was in custody in Cook County jail until he was transferred to federal custody. He had no other pending Illinois state matters at that time.

### IV. THE MINIMALLY SUFFICIENT SENTENCE IN THIS CASE

Under §3553(a) the sentence imposed must be "sufficient but not greater than necessary" to achieve the purposes of sentencing. While considering his social history and characteristics, supports Mr. Thomas' requested sentence. While in substantial agreement with the PSR, he requests the Court to consider his proposed sentencing range and depart downward from the Probation Department's proposed sentencing guideline calculation and recommendation.

Respectfully submitted,

/s/ John Miraglia

_____
Attorney for Tercalo Thomas

910 West Van Buren, Suite 102
Chicago, Illinois 60607
P: 312-829-2308
Email: jmiraglia@gmail.com